**In re IAMEC FUNDING, INC., Debtor.**

**Bankruptcy No. 99–507–8P1.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Jan. 25, 1999.

Mark J. Wolfson, Tampa, FL, for movant/Ocwen Fed Bank.

Andrew Foreman, Tampa, FL, for debtor.

## ORDER ON EMERGENCY MOTION TO (A) DISMISS CASE AND IMPOSE SANCTIONS AGAINST DEBTOR AND DEBTOR'S COUNSEL, (B) MOTION TO PERMIT CUSTODIAN TO REMAIN IN CONTROL OF PROPERTY, AND (C) RESPONSE TO DEBTOR'S EMERGENCY MOTION TO REMOVE STATE COURT RECEIVER AND FOR AUTHORITY TO USE CASH COLLATERAL FILED BY OCWEN FEDERAL BANK

ALEXANDER L. PASKAY, Chief Judge.

THE INK was hardly dry on the Voluntary Petition for Relief filed by IAMEC Funding, Inc. (Debtor) when the Debtor's right to obtain relief under Chapter 11 was challenged by Ocwen Federal Bank, F.S.B. (Bank) who filed a Motion to (A) Dismiss Case and Impose Sanctions Against Debtor and Debtor's Counsel, (B) Motion to Permit Custodian to Remain in Control of Property and (C) Response to Debtor's Emergency Motion to Remove State Court Receiver and for Authority to Use Cash Collateral. The Motion was scheduled on an emergency basis to consider the issues raised by the Motion, at which time this Court heard testimony of witnesses and having reviewed the documents offered and introduced into evidence now finds and concludes as follows:

The Debtor's Voluntary Petition for Relief under Chapter 11 was filed on January 13, 1999. The Petition was accompanied by Exhibit A which reveals that the Debtor has no assets, has unliquidated secured liabilities of $3,157,968.42 and unliquidated

unsecured liabilities of $100,000. The exhibit fails to indicate that this Debtor has issued any preferred or common stock. It further reveals that Robert Aldrich (Aldrich) controls the Debtor and Aldrich is the person who signed the Petition.

In order to put the issues raised by the Motions in the proper context, a brief summary of the history of a previous Chapter 11 case which involved Psychiatric Hospitals of Hernando, Inc., d/b/a Greenbriar Hospital (Greenbriar), should be helpful. Greenbriar filed its Petition for Relief on March 20, 1995. Greenbriar's economic life was shaky from the beginning and, in fact, it was unable to proceed to confirmation after having filed several different plans of reorganization. Greenbriar was the owner and operator of a psychiatric hospital located in Hernando County, Florida and was controlled by Cohen who was the sole officer and director of Greenbriar. On October 30, 1997, this Court entered an order and dismissed the Chapter 11 case of Greenbriar. First Union, the predecessor-in-interest of the Bank filed a foreclosure action after having obtained relief from the automatic stay on November 10, 1997, and also obtained the appointment of a receiver who took over the hospital and still operates Greenbriar.

On November 21, 1997, this Court conditionally vacated the Order of Dismissal and gave the Debtor a new chance to obtain confirmation of the latest Plan of Reorganization. On November 21, 1997, Greenbriar filed a Supplement to Amended Joint Plan filed by Greenbriar and IAMEC. It appears that the latest Plan called for an infusion of funds by IAMEC which was to be used to immediately satisfy certain past due payroll tax obligations, payment of property taxes due to the Tax Collector of Hernando County, payment of all ad valorem and personal property taxes. In Paragraph 18, the Supplement provided as follows:

"The Debtor shall not permit Robert or Hannah Cohen, James O'Shea, Michael Dunlevy, or any former or current other officer or director of the Debtor to interfere with or direct the operations and finances of Greenbriar Hospital or become an investor, employee or shareholder." (Bank's Exh. No. 2)

The plan of reorganization was ultimately confirmed on November 25, 1997 which also provided, inter alia:

"The identity and affiliation of persons who are to serve as directors or officer of the Debtor after the confirmation of the Plan, as amended, particularly Robert Aldrich, have been fully disclosed. The interest of the existing equity security holders in the Debtor is hereby extinguished and said equity is established in favor of IAMEC pursuant to the Plan, as amended, upon payment of the sums required to be paid ..." (Bank's Exh. No. 3)

On December 8, 1997, or after the last Plan of Reorganization, as supplemented, was confirmed, First Union, with the consent of the borrower, filed a Motion to Discharge the Receiver. The Motion was granted on April 3, 1998. (Bank's Exh. No. 4)

As noted earlier, the Plan, as amended, was to be funded by the infusion of funds by IAMEC who was to acquire all outstanding shares in the Debtor. In fact, IAMEC became, and still is, the sole stockholder of the Debtor. It appears, however, that the Plan was to be funded by monies borrowed by IAMEC from Cohen in the total amount of $463,500. (Exhibit 5) The Demand Note evidencing this loan reveals that upon confirmation of the Plan, Greenbriar was to enter into a long-term lease with Cortez Boulevard, a partnership, and enter into a letter of intent with Partial Solutions, Inc. to manage a partial program and IAMEC agreed to bear 50 percent of Greenbriar's management contract with Cohen with a minimum of $5,000 per month payable to Cohen for his management consulting services, in direct violation of the Supplement to Amended Joint Plan.

It appears that on April 12, 1998, BioGenetic Technologies, Inc. (BioGenetic) informed the Aldrich, president of Greenbriar, that BioGenetic acquired all outstanding shares of IAMEC which have been sold and delivered to BioGenetic and removed Aldrich from any and all positions and authority he held with Greenbriar. It further appears that Cohen, as sole stockholder of IAMEC, assigned the 10,000 shares of common stock of IAMEC to BioGenetic. Cohen signed this Bill of Sale and Purchase Agreement as seller. On April 17, 1998, First Union filed an Emergency Renewed Verified Motion for Appointment of Receiver and the Circuit Court in and for Hernando County, on the same date, entered an order and appointed Charles Kenner as Receiver, who is still in possession and control of the hospital facility. (Bank's Exh. No. 14) On June 10, 1998, the Bank acquired all First Union's interest in the mortgage and was substituted as Plaintiff in the foreclosure suit and on August 9, 1998, obtained a Summary Final Judgment in the principal amount of $2,557,785.95. (Bank's Exh. No. 10)

Even a perusal of this record leaves no doubt that on the date of the commencement of this case, IAMEC held no cognizable legal or equity ownership in any assets of Greenbriar. It further appears that even though IAMEC was the joint proponent of the Plan that was ultimately confirmed and was at the time the sole stockholder of IAMEC and Greenbriar, by virtue of a bill of sale it is BioGenetic who is currently the owner of the IAMEC. Thus, IAMEC no longer has any legal control over the affairs of Greenbriar. It is equally clear from this record that notwithstanding the clear provisions of the representation by the Supplement to Amended Joint Plan which expressly prohibited any involvement with the affairs of the Debtor by Robert or Hannah Cohen and others, Robert Cohen was, in fact, the secret funder of the Plan of Reorganization, contrary to the testimony of Aldrich in which he stated that the monies were loaned to him individually when in fact it is clear that the monies were loaned to IAMEC by Cohen, which loan was secured by a pledge of the corporate stock in IAMEC.

 Section 1112(b) of the Bankruptcy Code authorizes dismissal of a Chapter 11 case for "cause" and the legal literature is replete with cases which authorize dismissal of a Chapter 11 case for "cause," i.e. bad faith filing. *In the Matter of Welwood Corp.*, 60 B.R. 319, 321 (Bankr.M.D.Fla. 1986); *In re Maricamp Square Assoc.*, 139 B.R. 554, 557 (Bankr.M.D.Fla.1992). The Eleventh Circuit has firmly established that good faith is an implicit prerequisite to filing a Chapter 11 bankruptcy petition. *In re Albany Partners, Ltd.*, 749 F.2d 670 (11th Cir.1984). Further, courts in this circuit have found a lack of good faith constitutes "cause" to dismiss a case under Sec. 1112(b). *Matter of Hulse*, 66 B.R. 681 (Bankr.M.D.Fla.1986); *In re Albany Partners, Ltd., supra; In re Natural Land Corp.*, 825 F.2d 296–99 (11th Cir.1987). Although there is no particular test for determining whether a debtor has filed a petition in bad faith, courts may consider any factors which evidence "an intent to abuse the judicial process of the reorganization provisions" or, in particular, factors which evidence that the case filed "to delay or frustrate the legitimate efforts of secured creditors to enforce their rights." *In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393, 1394 (11th Cir.1988). In the last analysis, it is the Debtor's burden to seek relief under Chapter 11 to establish a real need and honest intent and the realistic possibility to achieve rehabilitation under the provisions of Chapter 11 of the Bankruptcy Code. It needs no elaborate discussion to point out that this Chapter was not designed and cannot be used to achieve a goal inconsistent with the policy aim of this Chapter established by Congress. When one analyzes the fact pattern which preceded the Joint Plan of Reorganization of Greenbriar and IAMEC and the present fact pattern of IAMEC, it is clear that this

is nothing but an impermissible attempt to make an end-run against the prohibition to modify a Plan which has been substantially consummated. Sec. 1127(b).

As noted, this Debtor has no assets of any sort or any kind. Even assuming, without conceding, that a stockholder of the Debtor might have standing to seek relief on behalf of the corporation, a proposition clearly without any legal basis, the fact remains that IAMEC no longer owns the stock in Greenbriar, thus the entity in control of the affairs of this Debtor is BioGenetic and not IAMEC.

Based on the foregoing, this Court is satisfied that (1) IAMEC had no standing to file the Petition and (2) even if it does, the Petition was filed in bad faith and for improper purpose and is ripe for dismissal.

This leaves for consideration the request for imposition of sanctions against the Debtor and Debtor's counsel. The matter of imposition of sanctions shall be set for hearing limited to consider the factual legal basis to impose sanctions and, if sanctions are to be imposed, to determine the appropriate sanctions.

Accordingly, it is

ORDERED, ADJUDGED AND DE-CREED that the Motion to Dismiss be, and the same is hereby, granted and the above-captioned Chapter 11 case is dismissed. It is further

ORDERED, ADJUDGED AND DE-CREED that a hearing be, and the same is hereby, scheduled to be held before the undersigned on the 16 day of February, 1999 at 3:00 p.m. to consider the factual legal basis to impose sanctions and, if sanctions are to be imposed, to determine the appropriate sanctions.