**In re SGL CARBON CORPORATION, Debtor.**

No. 98–2779–JJF.

United States District Court, D. Delaware.

April 23, 1999.

Laura Davis Jones, Brendan Linehan Shannon, Edwin J. Harron, Young Conaway Stargatt & Taylor, LLP, Wilmington, Delaware, Ronald DeKoven and George J. Wade, Shearman & Sterling, New York City, for the debtor.

Teresa K.D. Currier, Duane Morris & Heckscher LLP, Wilmington, Delaware, Kenneth H. Eckstein and Philip Bentley, Kramer Levin Naftalis & Frankel LLP, New York City, for the Official Committee of Unsecured Creditors.

Robert F. Stewart, Jr., James J. Rodgers and Martin J. Weis, Dilworth Paxson LLP, Wilmington, Delaware, Michael D. Ridberg and Stuart A. Schwager, Ridberg, Press & Sherbill, Bethesda, Maryland, for Nucor Corporation and Nucor–Yamato Steel Company.

Mark Minuti, Saul, Ewing, Remick & Saul LLP, Wilmington, Delaware, John B.

Wyss and N. Christopher Hardee, Wiley, Rein & Fielding, Washington, D.C., for the Co–Steel Companies.

Charles M. Oberly, III, Oberly & Jennings, P.A., Wilmington, Delaware, Kenneth L. Adams, Paul Bennett Bran and R. Bruce Holcomb, Dickstein Shapiro Morin & Oshinsky LLP, Washington, D.C., for the Ferromin Antitrust Claimants.

## OPINION

JOSEPH J. FARNAN, Jr., Chief Judge.

Presently before the Court is a Motion For Order Dismissing Chapter 11 Petition Pursuant To Bankruptcy Code § 1112(b) (D.I.86) filed by the Official Committee of Unsecured Creditors (the "Committee") in this Chapter 11 proceeding initiated by SGL Carbon Corporation (the "Debtor"). The Motion has been independently joined by the Debtor's customers, Nucor Corporation and Nucor–Yamato Steel Company (collectively "Nucor") (D.I.117)[1] and Co–Steel Inc., Co–Steel Raritan, Inc.; Co–Steel Sayreville, Inc., Co–Steel Sheerness PLC and Gallatin Steel Company (collectively "Co–Steel") (D.I.176). In addition, the Motion is supported by several entities who have filed an antitrust lawsuit against the Debtor, namely Ferromin International Trade Corporation, Ekinciler dis Ticaret A.S., Ekinciler Demir Celik Sanayi A.S., Asil Celik Sanayi ve Ticaret, A.S. Diler Demir Celik Endustrisi ve Ulasim Sanayi A.S. (f/k/a ICDAS Istanbul Celik ve Demir Izabe Sanayii A.S.), Colakoglu Metalurji A.S., Siam Yamato Steel Co., Ltd., Siam Construction Steel Co., Ltd., Siam Iron and Steel Co., Ltd., Smorgon Steel Group, Ltd., Shanghai Pudong Iron & Steel (Group) Co., Ltd. (f/k/a Shanghai No. 3 Steel Works), Shanghai No. 5 Steel (Group) Co., Ltd. (f/k/a Shanghai Huchang Steel Co., Ltd.), Fu Shun Steel Plant Import & Export Company, International Economic & Trading Co. (Wugang Group),

China Metallurgical Import & Export Magang Co., Lai Wu Iron & Steel Company, Daye Steel Group Import & Export Co., Zhangjiagang Novel Steel Ltd., Jiangsu Shagang Group Co., Ltd., Zhangjiagang Sheen Faith Steel Co., Ltd. Guangzhou Iron & Steel Co., Ltd., and Guangzhou Iron & Steel Holding Ltd. Corp. (collectively, the "Ferromin Antitrust Claimants") (D.I.232). The Debtor has filed a consolidated response (D.I.180) to the Motion and the supporting memoranda filed by the various entities. A hearing on the Motion was held on February 17, 1999, with all interested parties present. For the reasons set forth below, the Court will deny the Committee's Motion to Dismiss the Debtor's Chapter 11 Petition.

## BACKGROUND

The Debtor, a Delaware Corporation with its principal place of business in Charlotte, North Carolina, is a producer of, among other things, graphite electrodes. Graphite electrodes are used by steel producers to generate heat to melt steel in electric arc furnaces.

In early 1997, the United States Government began an investigation into alleged price-fixing by manufacturers of graphite electrodes. This investigation is currently ongoing. Shortly thereafter, various steel producers filed class action antitrust lawsuits in the United States District Court for the Eastern District of Pennsylvania, against the Debtor and several other graphite electrode manufacturers, alleging violations of Section 1 of the Sherman Act. These cases were consolidated by Judge Charles R. Weiner into a single class action, and Judge Weiner subsequently certified a class consisting of all purchasers of graphite electrodes in the United States between July 1, 1992 and June 30, 1997. A large number of class members opted out of the class prior to the November 27,

1. As alternative relief to the dismissal of the Debtor's Chapter 11 Petition, Nucor requests relief from the automatic stay pursuant to Bankruptcy Code Section 362(d)(1). The parties have agreed to continue the question of lifting the stay to a later date, and therefore, the Court will not address this issue.

1998 opt-out deadline, and many of these purchasers have either filed or threatened to file their own lawsuits.

Since the filing of the initial action, six additional complaints alleging similar antitrust violations were filed in federal court by purchasers of graphite electrodes. Each of these actions was either filed as a related case and assigned to Judge Weiner or was transferred to Judge Weiner by the Judicial Panel on Multidistrict Litigation for purposes of coordinating pretrial discovery. Upon completion of discovery, these latter-filed actions will be transferred to the courts in which they were originally filed for trial.

Additionally, the Debtor has been sued in a separate action for violation of the Canadian antitrust laws. This action is pending in Ontario, Canada.

On December 16, 1998, the Debtor filed its Chapter 11 Petition (the "Petition"). Two weeks later, on December 30, 1998, the United States Trustee formed the Committee. The Committee consists of nine members, eight of which are "minimill" steel companies who are also plaintiffs in the pending antitrust litigation. Of the eight Committee members who are also plaintiffs in the antitrust litigation, two serve as representatives of the certified class and six have opted out of the class. The remaining Committee member, Conoco Inc., is a trade creditor.

## DISCUSSION

By its Motion, the Committee seeks to dismiss the Debtor's Chapter 11 Petition on the grounds that the Petition is a litigation tactic designed to frustrate the prosecution of the civil antitrust claims pending against the Debtor and preserve the Debtor's equity from these claims. The Committee contends that the Debtor is not experiencing financial difficulty and is neither in default, nor overdue on any of its financial obligations. Accordingly, the Committee contends that the Debtor has no need for Chapter 11 protection and therefore, the Debtor's Petition should be dismissed as a "bad faith" filing pursuant to 11 U.S.C. § 1112(b).

Nucor joins the Committee's position that the Debtor is financially sound and is merely using its bankruptcy filing as a litigation tactic. In addition, Nucor raises the specific point that the Debtor's Chapter 11 filing is an attempt to circumvent jurisdiction in the Eastern District of Pennsylvania and thereby, deprive the antitrust claimants of their right to a jury trial.

While the Debtor does not dispute that it is currently a "financially healthy" company, the Debtor contends that the pending antitrust litigation poses a significant threat to its continued business. According to the Debtor, the antitrust plaintiffs seek hundreds of millions of dollars in damages, before trebling, which is an amount well in excess of the Debtor's ability to pay. In addition, the Debtor contends that the pending litigation has caused the Debtor to lose customers, has deteriorated employee morale and confidence, and has significantly distracted the Debtor's management from the Debtor's core business operations. According to the Debtor, its management has been consumed by its defense of the antitrust litigation and its attempts to settle the claims with its customers, many of whom will not do business with the Debtor until the antitrust matters are settled. While the Debtor disputes that the Bankruptcy Code imposes a good faith requirement on the filing of a Chapter 11 petition, the Debtor contends that, even if such a requirement were found to exist, its Chapter 11 Petition was filed in good faith and should not be dismissed.

Section 1112(b) of the Bankruptcy Court permits the dismissal of a Chapter 11 case "for cause." 11 U.S.C. § 1112(b) Elaborating further, Section 1112(b) lists nine circumstances in which "cause" may be found. Although the bad faith filing of a debtor's Chapter 11 petition is not among the circumstances enumerated, sev-

eral courts interpreting this section have concluded that a debtor's lack of good faith in filing its Chapter 11 petition can constitute sufficient cause for dismissal. *See e.g. Trident Assocs. Ltd. Partnership v. Metropolitan Life Ins. Co. (In re Trident Assocs. Ltd. Partnership),* 52 F.3d 127, 131 (6th Cir.1995); *Phoenix Piccadilly, Ltd. v. Life Ins. Co. (In re Phoenix Piccadilly Ltd.),* 849 F.2d 1393, 1394 (11th Cir.1988); *Carolin Corp. v. Miller,* 886 F.2d 693, 700 (4th Cir.1989). However, the Court of Appeals for the Third Circuit has not yet ruled on this issue[2], and courts within the Third Circuit are split on whether a good faith filing requirement is implicit in Section 1112(b). *See e.g. In re 1606 New Hampshire Ave. Assoc.,* 85 B.R. 298, 308 (Bankr. E.D.Pa.1988) (doubting pre-petition good faith requirement in Chapter 11 cases). For purposes of the instant Motion, however, the Court will assume, without deciding, that Section 1112(b) implicitly embraces a good faith requirement.

 In determining whether a Chapter 11 petition has been filed in good faith, courts examine whether the filing of the petition is an abuse of the bankruptcy court's jurisdiction. *In re Johns–Manville Corp.,* 36 B.R. 727, 730 (Bankr.S.D.N.Y. 1984) (holding that bad faith is more appropriately addressed in the context of debtor's emergence from Chapter 11 rather than in debtor's filing of petition, but recognizing that other courts apply concept of good faith at time of filing only "where it is demonstrated that the jurisdiction of the bankruptcy court has been abused"). Stated another way, a Chapter 11 petition is filed in good faith if there is "an arguable relation between the proposed reorganization and the purposes of Chapter 11." *In re The Bible Speaks,* 65 B.R. 415, 425 (Bankr.D.Mass.1986). As described by Congress, the purpose of a Chapter 11 case is "to restructure a business's finances so that it may continue to operate, provide its employees with jobs, pay its creditors and produce a return for its stockholders." *Id.* at 425 (quoting Report of the Committee on the Judiciary, House of Representatives to Accompany H.R. 8200, H.R.Rep. No. 595 (1977), *reprinted in* 1978 U.S.C.C.A.N. 6179). With the criteria for examining good faith established, the Court will turn to the Committee's argument concerning the financial condition of the Debtor.

In support of its Motion, the Committee contends that the Debtor's bankruptcy filing has nothing to do with insolvency, and therefore, the Debtor's filing is at odds with the purposes of Chapter 11 protection. Specifically, the Committee contends that a debtor may not file a Chapter 11 petition in response to litigation, unless the debtor is currently facing "actual financial distress, as opposed to only the speculative possibility of an eventual large judgment." (D.I. 86 at 20). In other words, the Committee contends that an otherwise healthy debtor may only file for Chapter 11 relief "following the entry of a judgment that renders it insolvent or unable to pay its debts as they come due." (D.I. 86 at 19).

 The fact that a debtor may not be insolvent at the time of its Chapter 11 filing does not establish that the filing was in bad faith. Unlike the prior Bankruptcy Act which required the debtor to be "insolvent or unable to pay his debts as they mature," the current Bankruptcy Code sets no financial standards for the filing of a voluntary petition in order to maximize a debtor's chance of success by encouraging early reorganization. *In re The Bible Speaks,* 65 B.R. at 424 (citing Chandler Act Amendments of 1938, ch. 575 § 323, 52 Stat. 840, 907 (June 22, 1938) (codified as 11 U.S.C. § 723) (repealed 1978)). Indeed, even the cases upon which the Committee relies recognize that insolvency is not required for a debtor to legitimately file a Chapter 11 petition. *See e.g. In re Tal-*

---

2. At least one court has construed the Third Circuit's decision in *In re Brown,* 951 F.2d 564 (3d Cir.1991) to strongly suggest, in dicta, that good faith is a prerequisite to filing a Chapter 11 case. *See In re SB Properties, Inc.,* 185 B.R. 198, 203 (E.D.Pa.1995).

*ladega Steaks, Inc.*, 50 B.R. 42, 44 (Bankr. N.D.Ala.1985). Accordingly, the Court finds no legal support for the Committee's contention that the debtor must be insolvent to invoke, in good faith, the protection of the Bankruptcy Code.

To the extent that "actual financial difficulty" suggests a financial condition other than insolvency, the Court likewise rejects the Committee's argument that a debtor's Chapter 11 filing is only in good faith if the debtor is experiencing financial difficulty. In support of its position, the Committee relies on cases where the debtors involved were under actual financial strain at the time of their Chapter 11 filings, such as *In re The Bible Speaks*, 65 B.R. 415 and *In re Johns–Manville, Corp.*, 36 B.R. 727.

In *The Bible Speaks*, the debtor was a defendant in a state court litigation, in which the plaintiff sought $7 million in damages. After losing a motion to dismiss and a motion to stay discovery in state court, the debtor filed a Chapter 11 petition. In denying the state court plaintiff's motion to dismiss, the court was particularly cognizant of the threat the litigation posed to the debtor's business: "The debtor conducts substantial and complex operations. It has numerous employees who depend on it for their livelihood. It has real creditors. Finally, the nature of its assets ... is such that the value of these assets would surely shrink significantly if the Debtor were forced to liquidate." *Id.* at 426. In addition, the court found it pertinent to note that there was "[no] reason to believe that the Debtor does not have the honest intention to complete a successful Chapter 11 reorganization." *Id.* at 424. Accordingly, the court concluded that the debtor did not have to wait for an unsuccessful verdict in the pending litigation to seek reorganization.

While the court in *The Bible Speaks* noted that the debtor was, in fact, experiencing cash flow difficulties at the time of its Chapter 11 filing, the court twice noted that it would reach the same conclusions, even if the debtor were not experiencing any cash flow problems. *Id.* at 426, 428. Further, the court rendered its conclusion that the debtor's filing was in good faith, despite the fact that the court had "no hesitation in finding that [the] resolution of the third party dispute was the prime purpose for the Chapter 11 filing." *Id.* at 429. Thus, it is the Court's view that *The Bible Speaks* actually negates, rather than supports, the Committee's position that the debtor must be experiencing financial difficulty or must await a judgment rendering it insolvent for its Chapter 11 filing to have been in good faith.

Similarly, the Court finds *Johns–Manville* to be consistent with the holding of *The Bible Speaks*. As the Committee points out, the debtor in *Johns–Manville* was required to book a $1.9 billion reserve on account of the multiple asbestos personal injury suits against it.[3] However, the court did not focus on the debtor's financial distress in analyzing whether its petition was filed in good faith. Rather, like the court in *The Bible Speaks*, the court in *Johns–Manville* focused on the threat that the pending litigation posed to the debtor and held that the debtor "must not be required to wait until its economic picture has deteriorated beyond salvation to file for reorganization." 36 B.R. at 736.

In denying the asbestos claimants motion to dismiss, the court examined whether Johns–Manville's bankruptcy filing

---

**3.** The Committee appears to simultaneously rely on, yet distinguish *Johns–Manville* from the instant case. To the extent that the Committee attempts to distinguish *Johns–Manville* by suggesting that the debtor faced a "flood of litigation" that was "far-flung," (D.I. 86 at 4, 19) the Court is not persuaded by the Committee's argument. Like the debtor in *Johns–Manville*, the Debtor in the instant case will face a number of suits in a number of forums once the cases are transferred upon completion of the coordinated discovery in the Eastern District of Pennsylvania. More importantly, like the debtor in *Johns–Manville*, the Debtor in the instant case faces a potentially substantial amount of damages, which are then subject to trebling.

abused the jurisdiction of the bankruptcy court. In so doing, the court enumerated several circumstances in which dismissal would be warranted, including (1) where the debtor never operated legitimately or was formed for the sole purpose of filing; (2) where there has been a change in legal form prior to the filing from an ineligible entity to one able to file for bankruptcy to avoid a foreclosure sale; (3) where the debtor never operated in business and never made a profit; and (4) where the debtor had no hope of reorganization. *Id.* at 737–738 (collecting cases). Comparing these circumstances to the circumstances present in *Johns–Manville,* the court found that Johns–Manville was not a "sham" company, but was a real business with real creditors in need of reorganization as a result of the mass litigation and potential liabilities it faced. *Id.* at 738. Accordingly, the court declined to dismiss the debtor's Chapter 11 petition.

■ Like the debtors in *Johns–Manville* and *The Bible Speaks,* the Debtor in this case is a viable and legitimate company with complex and substantial operations. The Debtor has numerous employees who depend on it for their livelihood and real creditors, all of whom are threatened by the distractions and potential liability of the looming litigation. The Debtor was not formed as a sham solely for the purposes of filing for bankruptcy, and the Debtor has a legitimate chance of reorganizing successfully. Further, none of the circumstances described as an abuse of the bankruptcy court's jurisdiction by the *Johns–Manville* court are present in this case. Accordingly, the Court concludes that the Debtor's Chapter 11 filing was not in bad faith and was consistent with, rather than an abuse of, the purposes of the Bankruptcy Code.

With regard to the litigation related cases cited by the Committee to support its motion to dismiss, the court is not persuaded that these cases justify a different result in this case. First, none of the cases cited by the Committee stand for the proposition that a debtor facing potentially devastating litigation cannot file for Chapter 11 protection, or that the debtor must have a judgment against it before it can file. As the Court discussed in the context of its discussion of *The Bible Speaks* and *Johns–Manville,* these propositions do not accurately reflect the law on this issue.

Second, the circumstances in these cases are significantly different, as a factual matter, than the circumstances in the instant case. For example in *In re HBA East,* the court dismissed the debtor's Chapter 11 petition because the debtors did not have a "realistic probability of successful reorganization." 87 B.R. 248, 261 (Bankr. E.D.N.Y.1988). Unlike the Debtor in this case, the debtors in *HBA East* were one man businesses, were never self-sufficient operations, had no legitimate assets and no realistic chance of reorganization. *See also In re Talladega Steaks, Inc.,* 50 B.R. 42 (dismissing petition where debtor did not intent to reorganize). In addition, the debtors in *HBA East* filed their petitions solely to avoid an upcoming deadline to answer a complaint in a state court action. *See also Furness v. Lilienfield,* 35 B.R. 1006, 1008 (D.Md.1983) (dismissing petition where debtor filed on "eve of trial" in a state court litigation that had been pending for fourteen years and debtor had made other improper attempts to avoid trial); *Argus Group 1700, Inc. v. Steinman (In re Argus Group 1700, Inc.),* 206 B.R. 757 (E.D.Pa.1997) (dismissing petition where single asset debtor filed after being sanctioned in state court and shortly before contempt hearing and for the sole purpose of creating federal jurisdiction because of alleged bias in state court).

As the Court has observed, the Debtor in the instant case has significant assets, employees, operations and revenues, and has a realistic chance of reorganizing successfully. Thus, the Debtor here bears no resemblance to the debtors in the cases cited by the Committee. In addition, the Debtor did not file its Chapter 11 petition to avoid resolution of the pending litiga-

tion. On the contrary, the Debtor has expressed its hope that its Chapter 11 filing will facilitate a speedy and efficient resolution to the pending litigation, while allowing the Debtor to maintain its business operations. *See The Bible Speaks,* 65 B.R. at 423 (noting that debtor's firm intention was to resolve claim before it rather than delay resolution). Accordingly, the Court concludes that the Debtor's petition has been filed in good faith and therefore, should not be dismissed.

Lastly, the Court is not persuaded by Nucor's additional argument that its potential loss of a jury trial renders the Debtor's filing a bad faith filing. The creditors in both *Johns–Manville* and *The Bible Speaks* might otherwise have sought jury trials if they had not been subject to the automatic stay, yet the respective courts did not consider the potential loss of a jury trial to be illustrative of the debtors' bad faith. *See e.g. Johns–Manville,* 36 B.R. 727; *The Bible Speaks,* 65 B.R. at 432 (holding that claimant's right to a jury trial is not determinative on question of dismissal of petition).

In sum, the Court concludes that the threat to the Debtor's business posed by the pending antitrust litigation against it is both real and substantial. The distractions of the litigation pose a serious threat to the continued successful operations of the Debtor. Further, the potential liability faced by the Debtor could very well force it out of business. Consistent with the policies and purposes of Chapter 11 which encourage early filing so as to increase the possibility of successful reorganization, the Court will not allow the Debtor to wait idly by for impending financial and operational ruin, when the Debtor can take action now to avoid such a consequence. Accordingly, the Court concludes that the Debtor's Chapter 11 filing bears a legitimate relationship to the purposes of Chapter 11 and was not filed as an abuse of the bankruptcy court's jurisdiction. Therefore, the Committee's Motion to dismiss will be denied.

## CONCLUSION

For the reasons discussed, the Court will deny the Motion To Dismiss (D.I.86) filed by the Committee and independently joined by Nucor (D.I.117) and Co–Steel (D.I.176).