### In re DOUBLE W ENTERPRISES, INC., Debtor.

**Bankruptcy No. 98–19451–8G1.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Aug. 20, 1999.

Thomas C. Little, Clearwater, Florida, for debtor.

Richard C. Prosser, Stichter, Riedel, Blain & Prosser, P.A., Tampa, Florida, for movants, W. William Ellsworth, Jr., Ellsworth Enterprises, Inc. and Wingo Investment Corp.

Robert Merkle, Tampa, Florida, U.S. Trustee.

## ORDER GRANTING MOTION TO DISMISS CASE

PAUL M. GLENN, Bankruptcy Judge.

**THIS CASE** came before the Court for hearing to consider the Motion to Dismiss Case filed by W. William Ellsworth, Jr., Ellsworth Enterprises, Inc., and Wingo Investment Corp. (collectively, the Movants).

Movants request that this chapter 11 case be dismissed pursuant to § 1112(b) because the Debtor is unable to effectuate a meaningful plan, and also because the case was filed in bad faith. In response, the Debtor primarily contends that it is faced with the real threat that numerous claims will be asserted against it in the future, and that the case was filed for the proper purpose of identifying and resolving the claims in a single forum.

### Background

The Debtor, Double W Enterprises, Inc., filed its petition under chapter 11 on November 6, 1998. In Exhibit "A" to the petition, the Debtor indicated that the total value of its assets equaled $75,353, and that the Debtor had no liabilities. The business of the Debtor was described as "real estate sales," and W. William Ellsworth, III was listed as the owner of 100 percent of the Debtor's stock.

The Debtor filed its Schedules of Assets and Liabilities and Statement of Financial Affairs on December 8, 1998. According to the Schedules, the Debtor owned no real property. Its personal property consisted of (1) a bank account containing

$1,271, and (2) a twenty-five percent interest in a partnership or joint venture known as Highland Properties valued at $1,000,000. The only creditor scheduled by the Debtor was William Ellsworth, Jr., listed as holding a disputed, unsecured claim in the amount of $450,000. William Ellsworth, Jr. (Ellsworth) is the father of W. William Ellsworth, III.

On its Statement of Financial Affairs, the Debtor disclosed that its income from its business in 1995 totaled $12,916, and that its income in 1996 totaled $982. For both years, these amounts were described as "other income from pass through entity." No income was disclosed for 1997 or 1998, the two years immediately preceding the filing of the chapter 11 petition. The Debtor stated that its current income and expenses were "zero."

In response to question number 4 on the Statement of Financial Affairs, which requires the Debtor to list all lawsuits to which it is a party, the Debtor replied "None."

On December 31, 1998, the Debtor filed an Objection to the Scheduled Claim of William Ellsworth, Jr. On February 22, 1999, the Debtor filed an Amended Objection to the Claim.

The Debtor subsequently filed a Motion to Extend Time to File Plan of Reorganization and Disclosure Statement and Extend Exclusivity. As grounds for the Motion, the Debtor asserted that it was still gathering information for its Plan, and that it was in the process of discovery related to the scheduled claim of Ellsworth. The Motion was granted, and the time within which the Debtor was permitted to file its Plan and Disclosure Statement was extended until May 7, 1999.

On April 22, 1999, the Debtor filed an adversary proceeding against W. William Ellsworth, Jr., Ellsworth Enterprises, Wingo Investment Corp., and Robert F. Harper, III. Count I of the adversary proceeding seeks an accounting from Ellsworth. Count II is an action for slander of title and declaratory judgment against Ellsworth, Ellsworth Enterprises, and Wingo Investment Corp. Count III seeks damages from Ellsworth and Robert F. Harper, III for breach of fiduciary duties.

On April 28, 1999, an Order was entered sustaining the Debtor's Amended Objection to Scheduled Claim of William Ellsworth, Jr. This Order provided that the "parties stipulate that the Debtor's Amended Objection to the Scheduled Claim of W. William Ellsworth, Jr. shall be sustained and that W. William Ellsworth, Jr. shall have no claim against the Debtor."

On May 6, 1999, the Debtor filed a further Motion to Extend Time to File Plan of Reorganization and Disclosure Statement and Extend Exclusivity. The basis for this request was that the "Debtor has filed an adversary proceeding seeking an accounting and other relief for a number of partnerships and other entities in which it owns an interest." The Motion was granted, and the Debtor was allowed until August 7, 1999, to file its Plan and Disclosure Statement.

On May 25, 1999, Movants filed their Motion to Dismiss Case. The Movants allege that the Debtor has no current income and no creditors. Additionally, Movants assert that the Debtor's only activity is litigation, and that the litigation involves only issues of state law.

After Movants filed the Motion to Dismiss, the Debtor filed an Amended Schedule D—Creditors Holding Secured Claims. In the Amendment, the Debtor listed Ellsworth Enterprises, Inc. and Wingo Investment Corporation as secured creditors with claims in undetermined amounts.

On June 21, 1999, after the hearing on the Motion to Dismiss, the Debtor filed an Amended Schedule F—Additional Creditors Holding Unsecured Nonpriority Claims. The Amendment consists of a list of 79 entities reflected as unsecured creditors holding disputed claims in undetermined amounts. The added creditors "are

all persons or entities controlled by W. William Ellsworth, Jr. or previously used by W. William Ellsworth, Jr. as straw men in business transactions." (Debtor's Verified Memorandum in Opposition to Motion to Dismiss, p. 9).

No claims have been filed in the case, although the bar date for filing proofs of claims has not yet been established.

The Debtor has filed Monthly Financial Reports for the postpetition period. Generally, the Reports reflect that the Debtor has received no income since the filing of the petition. The only disbursements have related to periodic bank service charges and the quarterly fees for the United States trustee. The portion of the Reports concerning inventory and fixed assets, taxes, personnel, and insurance are blank and reflect no activity.

## Discussion

Movants contend that this chapter 11 case should be dismissed pursuant to § 1112(b) of the Bankruptcy Code. To support this contention, Movants assert that the Debtor's assets exceed its liabilities, that it has no meaningful income from the operation of a business, that it has no creditors, and that this case essentially represents a two-party dispute involving matters of state law. Movants assert that the Debtor is simply forum shopping in an effort to pursue its litigation with Ellsworth in a venue of its choice.

In response, the Debtor contends that Ellsworth has recorded claims against two parcels of real property located in Polk County, Florida, in which the Debtor claims an interest, resulting in a disputed liability of the Debtor in an amount exceeding $1,000,000. The Debtor further asserts that it has "a reasonable and well founded belief that persons or entities on behalf of W. William Ellsworth, Jr. will assert claims against the Debtors and/or estate assets at some time in the future." (Verified Memorandum in Opposition to Motion to Dismiss, p. 11). According to the Debtor, it is this real threat of future claims, and piecemeal litigation of the claims, that warrants chapter 11 relief. The Debtor contends that it seeks to identify and resolve all of the potential claims against it in a central forum, and that this attempt to obtain finality is a proper purpose of chapter 11.

■ Section 1112(b) provides that a case may be dismissed for cause. The Eleventh Circuit Court of Appeals has long recognized that a debtor's lack of good faith constitutes cause for the dismissal of a case pursuant to § 1112(b), *In re Albany Partners, Ltd.*, 749 F.2d 670 (11th Cir.1984), and also cause for granting relief from the automatic stay pursuant to § 362(d)(1). *In re Natural Land Corp.*, 825 F.2d 296 (11th Cir.1987); *In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393 (11th Cir.1988). There is no particular test for determining whether a debtor has filed a petition in good faith, but in finding a lack of good faith courts have emphasized an intent to abuse the judicial process and the purposes of the reorganization process. See *Albany Partners*, 749 F.2d at 674, *Natural Land*, 825 F.2d at 298, and *Phoenix Piccadilly*, 849 F.2d at 1394, and see *In re Dixie Broadcasting, Inc.*, 871 F.2d 1023, 1027 (11th Cir.1989).

The District Court in Delaware recently addressed a motion to dismiss a case in which the moving parties argued that the debtor was not in financial distress, that the petition was filed as a tactic to avoid litigation in another forum, and that the case therefore was filed in bad faith. *In re SGL Carbon Corporation*, 233 B.R. 285, 287 (D.Del.1999). The debtor in that case replied that the litigation in the other forum posed a significant threat to its continued business.

While the factual setting in *SGL Carbon* is not identical to the facts presented in this case, the Court's analysis provides helpful guidance with respect to the issue of bad faith. The District Court first noted that the purpose of a chapter 11 case should be "to restructure a business's finances so that it may continue to operate,

provide its employees with jobs, pay its creditors and produce a return for its stockholders." *In re SGL Carbon Corporation*, 233 B.R. at 288 (quoting *In re The Bible Speaks*, 65 B.R. 415, 425 (Bankr. D.Mass.1986) and Report of the Committee on the Judiciary, House of Representatives to Accompany H.R. 8200, H.R.Rep. No. 595 (1977), U.S.Code Cong. & Admin.News 1978, at p. 5963). A chapter 11 petition may be filed in good faith if there is "an arguable relation between the proposed reorganization and the purposes of Chapter 11." *In re SGL Carbon Corporation*, 233 B.R. at 288 (quoting *In re The Bible Speaks*, 65 B.R. at 425.).

The District Court in *SGL Carbon* relied in large part on the earlier decision in *In re Johns–Manville Corp.*, 36 B.R. 727 (Bankr.S.D.N.Y.1984), which also dealt with a debtor's claim that it was threatened by massive pending and future litigation. The Court in *SGL Carbon*, as well as the Court in *Johns–Manville*, declined to dismiss the chapter 11 cases. In both cases, however, the Courts focused on the fact that the debtors were viable and real businesses with substantial operations and revenue, that the debtors had employees who depended on them, and that the debtors had real creditors who needed protection as a result of the significant potential liability that could result from extensive litigation. *In re SGL Carbon Corporation*, 233 B.R. at 290.

Additionally, the litigation in both *SGL* and *Johns–Manville* was already pending at the time that the bankruptcy petitions were filed. Consequently, the Court in *SGL* found in that case that "the threat to the Debtor's business posed by the pending antitrust litigation against it is both real and substantial." *Id.* at 291.

■ In the case under consideration, the Court finds that the circumstances justify dismissal of the case. Unlike the circumstances in *SGL Carbon* and *Johns–Manville*, (1) the debtor in this case has no significant on-going business operation to preserve, and (2) the Debtor has not shown that the potential assertion against it of multiple claims and unmanageable litigation poses an immediate threat to its assets.

## A. Absence of business operations.

The Debtor has no employees, as evidenced in its Monthly Operating Reports. Further, the Debtor received only minimal income in 1995 and 1996, and has received no income either in the two years prior to the filing of the petition, or in the period since the case has been pending. (See Statement of Financial Affairs and Monthly Operating Reports). Additionally, the portions of the Monthly Reports filed by the Debtor concerning inventory, fixed assets, taxes, and insurance are blank and reflect no activity. The Debtor does not appear to operate any sort of on-going business.

Consequently, the Debtor has no trade or business debt resulting from any traditional business operation. The only creditor originally listed on the Debtor's schedules was William Ellsworth, Jr., the father of the sole stockholder of the Debtor, whose claim ultimately was disallowed. After the case had been pending for approximately seven months, and after Movants had filed their Motion to Dismiss, the Debtor filed an amended schedule of secured creditors. The amended schedule listed two entities controlled by Ellsworth. The amounts of the claims were listed as undetermined.

## B. Potential claims.

After the hearing on the Motion to Dismiss, the Debtor filed an amended schedule of unsecured creditors. This amendment contained a list of 79 entities which were scheduled as holding disputed claims in undetermined amounts. All of the entities listed on the amendment are "persons or entities controlled by W. William Ellsworth, Jr. or previously used by W. William Ellsworth, Jr. as straw men in business transactions." (Verified Memo-

randum in Opposition to Motion to Dismiss, p. 9). The Debtor contends that these entities are "future claimants, many of which will undoubtedly assert claims against the Debtor's estates." (Verified Memorandum, p. 8).

The Debtor acknowledges that the entities listed as creditors have not actually asserted any claims against it, with the exception of two Notices of Ownership Interest filed by Ellsworth Enterprises, Inc. and Wingo Investment Corp. Consequently, the Debtor seeks to show in its Verified Memorandum in Opposition to Motion to Dismiss that the threat of future claims is real and not imagined. In this regard, the Debtor sets forth a litany of alleged prior misconduct or antagonistic activity on the part of Ellsworth. (Debtor's Verified Memorandum, pp. 11–20). The Debtor's Memorandum includes claims that Ellsworth orchestrated "sham" transactions, that Ellsworth has refused to produce books and records, that Ellsworth has threatened litigation, that Ellsworth historically has taken inconsistent positions regarding the Debtor's assets and liabilities, and that Ellsworth has placed liens on property owned by nondebtors. The purpose of the recitation is to show that the threat of future claims by Ellsworth is "real and well-founded."

■ Debtors are not required to wait to file a chapter 11 petition until after their financial condition is so weakened from litigation that they are unable to reorganize. See *In re Johns–Manville*, 36 B.R. at 736. On the other hand, a debtor should show that the threat of financial distress is more than speculation that multiple, unidentified claims may be asserted against it in the future.

In this case, it is clear that the Debtor and Ellsworth have an adverse relationship. As set forth above, however, no litigation was pending at the time that the chapter 11 petition was filed. Further, the Debtor has not shown that the threat of debilitating litigation is immediate. Although the Debtor has made numerous allegations regarding Ellsworth's prior conduct, there appears to be no particular basis for claims that may be asserted against it. This case is unlike *SGL Carbon* and *Johns–Manville*, for example, where the legal and factual bases for the future claims against the debtors were identified and certain. In this case, the Debtor admittedly does not know the basis for any claims against it, and hopes to learn about the claims through the bankruptcy process of scheduling potential creditors and requiring the listed creditors to "come forward with claims if they have them." (Transcript, Motion to Dismiss, June 7, 1999, p. 18).

■ Finally, it appears that the potential claims are claims that would otherwise be subject to resolution by the state courts.

> The mere fact that the Debtors fear that the litigation in State Court may be more protracted or contentious is not reason enough for this Court to step into the middle of what is essentially a two-party dispute based on non-bankruptcy law. See, e.g., In re Mazzocone, 183 B.R. 402, 414–415 (Bankr.E.D.Pa.1995). Debtors are not entitled to have the Bankruptcy Court hear their complaints merely because they are disgruntled with the process in the State Court.

*In re Muskogee Environmental Conservation Company*, 236 B.R. 57, 66–67 (Bankr. N.D.Okla.). Chapter 11 relief should not be available to entities filing to obtain a perceived advantage in litigation with others or to provide an alternate forum. *In re HBA East, Inc.*, 87 B.R. 248, 260 (Bankr.E.D.N.Y.1988). In this case, therefore, the Debtor should not be permitted to preempt the state court process merely because it anticipates that the claims may be raised in vexatious or inconsistent modes.

### Conclusion

"The Eleventh Circuit has firmly established that good faith is an implicit prereq-

uisite to filing a chapter 11 bankruptcy petition." *In re IAMEC Funding, Inc.,* 234 B.R. 539, 542 (Bankr.M.D.Fla.1999) (citing *In re Albany Partners, Ltd.,* 749 F.2d 670 (11th Cir.1984)).

The Court finds that the petition in this case was not filed in good faith. First, the Debtor has no significant on-going business operation to preserve. The Debtor has no income or revenue, no employees, and no body of creditors arising from the operation of any business. Second, the Debtor has not shown that the threat of multiple future claims is sufficient to satisfy the good faith requirement. No lawsuits were pending at the time that the petition was filed, and the Debtor has neither explained the basis for any particular claim that may be asserted against it, nor shown that the threat of unmanageable litigation is imminent. The combination of these factors compels the conclusion that the case was not filed for a proper purpose. The case does not promote the policy of chapter 11 "to restructure a business's finances so that it may continue to operate, provide its employees with jobs, pay its creditors and produce a return for its stockholders." See *In re SGL Carbon Corporations, supra.* Consequently, the Court determines that the case was not filed in good faith and should be dismissed.

Accordingly:

**IT IS ORDERED** that:

1. The Motion to Dismiss Case filed by W. William Ellsworth, Jr., Ellsworth Enterprises, Inc., and Wingo Investment Corp. is granted.

2. This chapter 11 case is dismissed.