## In re CHRIS–MARINE U.S.A., INC., Debtor.

### No. 00–4010–3F1.

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

April 4, 2001.

Donna A. Bucella, Ann Reid, Christopher M. Pietruszkiewicz, U.S. Department of Justice, Washington, DC, for United States.

Raymond R. Magley, Jacksonville, FL, for Debtor.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

JERRY A. FUNK, Bankruptcy Judge.

This Case is before the Court on the Motion to Dismiss and supporting Memo-

randum of Law ("the Motion to Dismiss") filed by the United States of America ("the United States") on December 7, 2000. (Doc. 59.) Chris–Marine USA, Inc. ("Debtor") filed a Memorandum of Law in opposition to the Motion to Dismiss on February 12, 2001. (Doc. 80.) The Court held an evidentiary hearing on the Motion to Dismiss on March 22 and 23, 2001, and elected to take the matter under advisement. (Doc. 92.) Upon review of the evidence presented and upon review of the arguments and submissions of counsel, the Court finds it appropriate to deny the Motion to Dismiss.

## FINDINGS OF FACT

Debtor is a Florida corporation fully owned by Chris–Marine International Ltd. ("Chris–Marine International"), a corporation based in the Cayman Islands. Chris–Marine International is owned by the probate estate of the late Alv B. Christensson ("Christensson"), co-founder of a Swedish corporation, Chris–Marine AB, and its various affiliates, including Debtor.

Since 1980, Debtor has operated as a sort of referral service for diesel mechanics specializing in the repair of moderate-to-large scale diesel engines in shipping and cruise vessels and in power plants. Debtor has about twenty mechanic employees and uses the services of twenty or so independent mechanics. Debtor sends these mechanics out into the field to repair diesel engines in situ. These mechanics either own their own tools or use the tools provided to them by the owners of the engines they are sent to repair.

Debtor also maintains a twenty-thousand square foot workshop located at 732 Parker Street in Jacksonville, Florida, where Debtor machines diesel engine parts for repair using specialized grinding machines manufactured by Chris–Marine AB.

Debtor's mechanics are at work on thirty to fifty projects at any given time.

In 1999, Debtor grossed approximately $3,600,000.00.

Until 1998, Debtor also acted as a dealer for Chris–Marine AB's grinding repair machines.

In December 1992, the Internal Revenue Service ("IRS") began investigating Debtor after Debtor's 1990 tax return raised several red flags.

The IRS issued four informal Information Document Requests to Debtor during late 1992 and early 1993, seeking documents related to transactions between Debtor and Chris–Marine International's other subsidiaries.

A discovery dispute developed, and the IRS elected to pursue its formal discovery options.

On September 17, 1993, the IRS issued a Formal Document Request ("FDR") pursuant to 26 U.S.C. § 982(c)(1) seeking production of certain documents allegedly relevant to its investigation of Debtor.

On November 17, 1993, the IRS issued another FDR. The second FDR sought production of the same documents as the first for a different period.

In late 1993 and early 1994 Debtor filed two petitions, Case No. 93–1626–Civ–J–16 and Case No. 94–121–Civ–J–16, in the United States District Court, Middle District of Florida ("the district court"), to quash the FDRs pursuant to 26 U.S.C. § 982(c)(2)(A).

In 1995, Chris–Marine AB formed a new affiliate, Chris–Marine East Coast. Chris–Marine East Coast resides at the same address as Debtor and currently has one employee, whose time is split between Chris–Marine East Coast and Debtor.

On January 20, 1995, the Middle District of Florida magistrate judge ("the magistrate") issued a Report and Recommendation finding that Debtor's petitions to quash the FDRs should be denied and that Debtor should be ordered to comply with the FDRs.

On March 22, 1995, the district court adopted the magistrate's findings and recommendations. *See Chris–Marine USA, Inc. v. United States,* 892 F.Supp. 1437 (M.D.Fla.1995).

Debtor did not produce the documents requested as ordered by the district court. According to Kent Ekenberg ("Ekenberg"), Debtor's vice president, Debtor and Chris–Marine International's various subsidiaries do not have and never have had possession of documents of the kind the IRS seeks in the two FDRs.

On March 4, 1998, the magistrate issued a Report and Recommendation finding that Debtor should be held in contempt for failure to produce the documents sought by the FDRs. (United States Ex. 7.) The magistrate recommended that Debtor be fined $2,500.00 per day and that Ekenberg be incarcerated until Debtor produces the requested documents.

On April 1, 1998, Debtor entered into a Contract for Bulk Sale of all of its workshop equipment to Chris–Marine East Coast in exchange for a total of $336,-300.00—$146,086.27.00 in antecedent debt forgiveness and $190,213.73 in cash to be paid by April 1, 1999. (United States Ex. 1.) Debtor did not provide any documentation of the earlier $146,086.27 loan. Ekenberg testified that the $146,086.27 had been loaned to Chris–Marine East Coast by Chris–Marine AB for the purpose of loaning it to Debtor. Debtor's accountant testified that the $190,213.73 was paid to Debtor sometime in early 1999.

According to Ekenberg, Chris–Marine AB organized the sale in order to establish Chris–Marine East Coast as the new United States dealer for its specialized diesel repair machines. Ekenberg testified that Debtor's operations could then focus entirely on mechanic referral to customers in the field, a business that had different "liabilities" than the equipment sale business.

The United States argues that Christensson arranged for the sale of Debtor's assets in order to evade collection attempts stemming from the accruing per diem contempt judgment.

On May 11, 1998, the district court approved the magistrate's March 4, 1998 Report and Recommendation, and the $2,5000.00 per day fine began to accrue.

On July 22, 1998, the magistrate issued a Report and Recommendation finding that Debtor had not purged itself of contempt, that Debtor should pay the United States' fees and costs, and that a warrant should be issued for Ekenberg's arrest. (United States Ex. 8.)

In December 1998 Christensson died. Christensson's probate estate is currently under administration in Sweden.

In early 1999 Debtor's accountants reversed the sale of Debtor's assets to Chris–Marine East Coast through some balance sheet adjustments. Debtor's assets were returned and the entire purchase price, including the antecedent loan forgiveness, recorded as a new loan from Chris–Marine East Coast to Debtor. Debtor's accountant testified that the sale was undone because he wanted to eliminate any questionable transactions from Debtor's books.

Chris–Marine East Coast remains the United States dealer for Chris–Marine AB's diesel repair equipment. According to Ekenberg, that business grossed Chris–

Marine East Coast about $650,000.00 in 2000.

On March 19, 1999, the district court approved the magistrate's findings of continuing contempt and ordered the continuing accrual of the $2,500.00 per day contempt fine. (United States Ex. 10.) The district court entered a judgment for the United States in the amount of $782,500.00, the accrued contempt fine from May 11, 1998 to March 19, 1999. (Debtor's Ex. 2.)

On May 23, 2000, Debtor voluntarily filed a petition for Chapter 11 bankruptcy protection. According to Ekenberg, the filing was precipitated by Debtor's inability to purge its contempt of the district court's orders combined with its inability to pay the accruing contempt fine. Ekenberg testified that Debtor pays all of its other creditors in the ordinary course of business.

On September 18, 2000, the Court entered orders approving stipulations for adequate protection for Chrysler Financial Co. LLC ("Chrysler") and MultiLift Services, Inc. ("MultiLift"), Debtor's only purportedly secured creditors other than the IRS.

On September 20, 2000, Debtor filed its Disclosure Statement and Plan of Reorganization. (Debtor's Ex. 4 and 5.) Debtor's Plan provides for payment of $800,000.00 at eight percent interest over sixty-seven months to the general unsecured class of claims, which is dominated by the United States' contempt judgment. The Plan does not make provision for payment of any unpaid taxes or for treatment of any portion of the contempt judgment as an administrative expense. Under the Plan, Chris–Marine International's equity in the reorganized entity would be auctioned off at the confirmation hearing, with Chris–Marine International entering a beginning minimum bid of $25,000.00. The Plan provides for the assumption of all executory contracts.

On November 16, 2000, Debtor filed a Motion for Extension of Exclusivity Period to Procure Acceptances of Plan of Reorganization. (Doc. 51.)

On November 17, 2000, the IRS filed a Proof of Claim in the amount of $8,505,844.48 for unpaid taxes, penalties and interest ("the unpaid tax claim"). (Debtor's Ex. 7.) The claim and accompanying tabulation indicate that the United States believes $6,095,014.52 of that amount qualifies as a priority claim under 11 U.S.C. § 507(a)(8). The United States also claims a lien on all of Debtor's interests in property as security for a portion of the unpaid tax claim pursuant to 26 U.S.C. § 6321.

On November 17 the United States, through the Department of Justice, also filed a Proof of Claim in the amount of $1,860,000.00 for the accrued contempt judgment ("the contempt claim").

On November 17 the United States also filed a Motion for Allowance of Administrative Expenses. (Doc. 52.) The United States asserts in this Motion that the amount of the contempt claim accruing postpetition should be treated as an administrative expense under 11 U.S.C. § 503(b).

On November 22, 2000, Debtor filed an Objection to the unpaid tax claim. (Doc. 54.)

On December 5, 2000, the Court held a hearing on Debtor's Disclosure Statement and on Debtor's Motion to Extend Exclusivity. (Doc. 56 and 57.) The Court approved Debtor's Disclosure Statement and granted Debtor's Motion to Extend Exclusivity.

On December 7, 2000, the United States filed the instant Motion to Dismiss. (Doc. 59.)

On December 14, 2000, the Court entered an Order approving Debtor's Disclosure Statement and scheduling a confirmation hearing for April 19, 2001. (Doc. 63.)

On December 26, 2000, the IRS filed a Response to Debtor's Objection to the unpaid tax claim. (Doc. 66.)

On December 26, the United States filed a Motion to Withdraw Reference and supporting Memorandum of Law. (Doc. 67.) The United States argued that the district court should withdraw this Court's reference pursuant to 28 U.S.C. § 157(d) on the grounds that the scrum over the unpaid tax claim constitutes a two-party, federal, and wholly non-bankruptcy dispute. The United States argued that, by filing bankruptcy and by contesting its alleged tax liability in this Court as a claim objection, Debtor improperly forum-shopped the battle over its alleged tax liability.

On January 16, 2001, the Court entered an Order scheduling a hearing on Debtor's Objection to the unpaid tax claim for May 23, 2001. (Doc. 75.)

On January 17, 2001, Debtor provided the United States with documents purporting to show that Debtor did not have, and never has had, possession of the documents sought by the FDRs.

On February 12, 2001, Debtor filed a Memorandum of Law in opposition to the instant Motion to Dismiss. (Doc. 80.)

On March 12, 2001, the United States filed a Notice of Rejection of Debtor's Plan of Reorganization. (Doc. 85.)

On March 16, 2001, the district court denied the United States' Motion to Withdraw Reference. (Debtor's Ex. 6.) The district court found that "the only issue before [the district court] is whether the coercive sanction of incarceration should be imposed on Kent Ekenberg ... [t]he

issue before the Bankruptcy Court involves the amount of tax owed to the United States—a matter which the District Court has never ruled upon."

On March 22 and 23, 2001, the Court held an evidentiary hearing on the Motion to Dismiss and took the matter under advisement.

## CONTENTIONS OF THE PARTIES

The United States argues that Debtor's Case should be dismissed pursuant to 11 U.S.C. § 1112(b) on the grounds that Debtor is abusing the reorganization provisions of the Bankruptcy Code by filing solely to stop the accumulation of and to limit its liability for a per diem contempt judgment. The United States alleges that Debtor has possession of the documents requested by the FDRs and is thus perfectly able to purge its contempt, but is using this Case to avoid doing so and to avoid the sanction for not doing so as well. Additionally, the United States contends that Debtor filed this Case as an improper attempt to "forum shop" the purely two-party dispute over its alleged tax liability.

Debtor counters that it is a viable business, with profitable, stable operations and long-time employees. Debtor asserts that it has every intention of successfully reorganizing under Chapter 11. Debtor alleges that it is unable and will always be unable to purge itself of the per diem contempt judgment, and that it has made good efforts to provide the United States with evidence to that effect. Debtor argues that this Court should properly hear the tax dispute as a claim objection because it is the first and only court before which the tax dispute has been brought.

## CONCLUSIONS OF LAW

### I. THE § 1112(B) "CAUSE" STANDARD

█ Under 11 U.S.C. § 1112(b), a bankruptcy court may dismiss a Chapter 11

case for "cause." Section 1112(b) provides, in relevant part:

> (b) Except as provided in subsection (c) of this section, on request of a party in interest or the United States trustee ... and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause ...

11 U.S.C. § 1112(b) (2001). Section 1112(b) goes on to provide ten examples of "cause," none of which apply to the instant case. However, Congress did not intend for the § 1112(b) list to be exhaustive. *See In re Albany Partners Ltd.*, 749 F.2d 670, 674 (11th Cir.1984).

■ A court may dismiss a Chapter 11 Case if a petition for relief was filed without good faith. *See In re Phoenix Piccadilly*, 849 F.2d 1393, 1394 (11th Cir. 1988). There is no particular test or standard for good faith. *See id.* A court has broad discretion to evaluate the totality of the circumstances in each case and to determine whether those circumstances indicate a lack of good faith. *See Singer Furniture Acquisition Corp. v. SSMC Inc., N.V. (In re Singer Furniture Acquisition Corp.)*, 254 B.R. 46, 51 (M.D.Fla. 2000). "The courts may consider any factors which evidence 'an intent to abuse the judicial process and the purposes of the reorganization provisions' ..." *Id.* (quoting *Albany Partners*, 749 F.2d at 674).

■ The burden is on a movant to prove by a preponderance of the evidence that cause to dismiss exists. *See Colonial Daytona Ltd. Partnership v. American Savings of Florida FSB*, 152 B.R. 996, 1002 (M.D.Fla.1993). In evaluating a § 1112(b) motion to dismiss, all doubts are to be resolved in favor of a debtor. *See In re Austin Ocala Ltd.*, 150 B.R. 279, 282 (Bankr.M.D.Fla.1993).

■ In *Phoenix Piccadilly* the Eleventh Circuit listed six circumstantial factors tending to strongly evidence a lack of good faith in filing for Chapter 11 relief:

> (i) The Debtor has only one asset, the Property, in which it does not hold legal title;
>
> (ii) The Debtor has few unsecured creditors whose claims are small in relation to the claims of the Secured Creditors;
>
> (iii) The Debtor has few employees;
>
> (iv) The Property is the subject of a foreclosure action as a result of arrearages on the debt;
>
> (v) The Debtor's financial problems involve essentially a dispute between the Debtor and the Secured Creditors which can be resolved in the pending State Court Action; and
>
> (vi) The timing of the Debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the Debtor's secured creditors to enforce their rights.

*Phoenix Piccadilly*, 849 F.2d at 1394–1395.

■ The fact that a debtor filed for Chapter 11 relief solely to halt the accumulation of a per diem contempt judgment may be a factor in finding that a debtor did not file in good faith. *See In re Winn*, 43 B.R. 25, 28 (Bankr.M.D.Fla.1984). "[A]n attempt by a Debtor to circumvent or escape the consequences of a contempt judgment issued by a court of competent jurisdiction was never a legitimate aim to be achieved by use of the rehabilitation provisions of this chapter and without doubt constitutes an impermissible use of Chapter 11 of the Bankruptcy Code." *Id.*

■ However, a bankruptcy court should not dismiss a Chapter 11 case solely because a commercially viable debtor seeks to survive the ruinous effects of a single large judgment, whether it is grounded on contempt or on some other

malfeasance. *See In re Double W Enterprises, Inc.,* 240 B.R. 450, 454 (Bankr. M.D.Fla.1999). "[T]he purpose of a chapter 11 case should be 'to restructure a business's finances so that it may continue to operate, provide its employees with jobs, pay its creditors and produce a return for its stockholders."' *Id.* (quoting *In re SGL Carbon Corp.,* 233 B.R. 285, 288 (D.Del.1999)). The fact that a debtor's threatened inability to continue operating for the benefit of its various constituencies is the result of a civil judgment, the result of a civil contempt fine, or the result of contractual liabilities is less probative to the dismissal determination than the fact that a debtor actually has a prospect of reorganizing in order to serve those constituencies in the future. As one court stated,

> [T]his Court is satisfied that when one considers the good faith or lack of same of a debtor who seeks relief under the current Chapter 11, the real test that still remains is the presence of honest intention of the Debtor and some real need and real ability to effectuate the aim of the reorganization even if this involves the total liquidation of the assets.

*In re North Redington Beach Assoc. Ltd.,* 91 B.R. 166, 168 (Bankr.M.D.Fla.1988).

 Additionally, a court should be reluctant to dismiss a case or to grant relief that will effectively end any chance for reorganization when confirmation, the natural end of the carefully designed Chapter 11 process, looms soon in the future. *See In re Annicott Excellence, LLC,* 258 B.R. 278, 285 (Bankr.M.D.Fla. 2001). A creditor must show some compelling justification for a court to abort the statutory confirmation process within a short time of its climax. *See id.*

## II. APPLICATION TO THE INSTANT CASE

 The Court finds that the United States failed to carry its burden to show a lack of good faith by a preponderance of the evidence.

The Court finds that the United States sufficiently proved that Debtor filed its petition for relief in an effort to halt the accumulation of the contempt judgment. Debtor does not contest that assertion. Further, the Court finds that the United States sufficiently proved that Debtor desires to litigate the unpaid tax dispute as a claim objection before this Court. Again, Debtor does not deny that it wishes for this Court to litigate that dispute.

However, the Court finds that neither of those facts is sufficient to show a lack of good faith intent to reorganize in the face of Debtor's evidence that it is a viable business with sufficient income to meet expenses, with numerous employees, and with good prospects for reorganization.

The Court notes that the United States' evidence fails to establish that any of the *Phoenix Piccadilly* factors exist in the instant case. Debtor owns more than one asset. Debtor's liabilities may be entirely unsecured with the exception of Chrysler and MultiLift's small, adequately protected claims. Debtor employs around forty mechanics. Debtor is not the defendant in any foreclosure action or in any other pending action in any other court. Debtor's bankruptcy filing did not halt an impending foreclosure action, and in fact it appears that the timing of the filing evidences good faith—Debtor allowed the contempt judgment to accrue for some time before filing bankruptcy to stay such accrual.

The Court finds that the United States did not prove by a preponderance that Debtor committed sufficient fraud against

creditors in selling its assets to Chris–Marine East Coast in 1998 so as to mandate dismissal of this Case.

The Court finds that the nature and circumstances of the contempt judgment alone do not justify dismissing Debtor's Case. The United States' reliance on the nature of the judgment that precipitated Debtor's filing is misplaced. Outside of the Code sections establishing priority in distribution and nondischargeability, the Code does not create a hierarchy of debts or a category of debts unworthy of treatment in this forum. This Court regularly "frustrates" a wide variety of judgments of courts of proper jurisdiction by staying actions to collect and by stopping the accumulation of interest and penalties until the Code procedures run their course. Contempt judgments have not been specially exempted from this treatment by the Code, and the Court will not fashion such an exemption on its own.

Additionally, the Court finds that the Debtor's bringing of an Objection to the IRS' unpaid tax claim in this forum does not justify dismissal. This Court is the first and only court to take up the tax liability dispute, and is perfectly able to adjudicate it fairly and efficiently. The district court acknowledged that this Court should hear the tax dispute in its Order denying the Motion to Withdraw Reference. The Court will not dismiss Debtor's Case because Debtor elects to pursue litigation in a forum sanctioned by the Code, by Title 28, and by the only other court with alleged jurisdiction over and interest in this matter.

Finally, the Court finds that the United States failed to bring forward evidence of any compelling justification for dismissal less than three weeks before the scheduled confirmation hearing.

The Court notes that the United States' evidence of Debtor's alleged tax evasion and discovery malfeasance is minimally probative to the inquiry at hand. The Court also finds Debtor's evidence of its alleged innocence of tax evasion and contempt equally immaterial. The Code does not limit eligibility for bankruptcy relief to those of high moral character or to those whose inability to meet their financial obligations is no fault of their own. The Code does, however, bar relief to those who have no intent to follow the procedures and to respect the purposes of the Code. The United States failed to bring forward sufficient evidence that Debtor belongs in the latter group.

## CONCLUSION

The Court finds that the United States failed to carry its burden to prove by a preponderance that Debtor filed for Chapter 11 relief with a lack of good faith. Therefore, the Court will deny the United States' Motion to Dismiss.

The Court will enter a separate Order in accordance with these Findings of Fact and Conclusions of Law.