**In re Henry Scott CALDWELL, Jr., Debtor.**

**No. 6:09–bk–06182–ABB.**

United States Bankruptcy Court, M.D. Florida, Orlando Division.

Aug. 27, 2009.

---

**11.** *Clarkson State Bank v. Oster (In re Oster),* 2011 WL 739539 (E.D.Mich.2011).

Deborah M. Smith, Deborah M. Smith PA, Melbourne, FL, for Debtor.

## ORDER

ARTHUR B. BRISKMAN, Bankruptcy Judge.

This matter came before the Court on the Verified Motion for Relief from the Automatic Stay (Doc. No. 34) ("Motion") filed by Coastal Bank ("Coastal") seeking relief from the automatic stay of 11 U.S.C. Section 362(a) with respect to an investment property the Debtor Henry Scott Caldwell, Jr., a/k/a H. Scott Caldwell ("Debtor"), purports to own. The preliminary hearing was held on June 23, 2009 and the final evidentiary hearing was held on July 21, 2009 at which the Debtor, his counsel, a representative of Coastal Bank, Coastal Bank's counsel, and Laurie K. Weatherford, the Chapter 13 Trustee ("Trustee"), appeared.

The Court directed the Debtor to file cash flow documentation and granted the parties leave to file post-hearing briefs. The Debtor filed an Affidavit (Doc. No. 52) and Coastal filed a post-hearing brief (Doc. Nos. 58, 59). Coastal's Motion is due to be denied for the reasons set forth herein. The Court makes the following Findings of Fact and Conclusions of Law after reviewing the pleadings and evidence, hearing live proffers and argument, and being otherwise fully advised in the premises.

## FINDINGS OF FACT

The Debtor filed this case on May 5, 2009 ("Petition Date"). He is self-employed and his sources of income are his lawn care business and rents from various investment properties located in Brevard County. He set forth in Schedule A (Doc. No. 10) he owned six properties on the Petition Date:

(i) his homestead located at 863 Coleman Street, Melbourne, Florida, which is a duplex and the non-residence portion is leased to a tenant;

(ii) 453 St. Lucia Court, Satellite Beach, Florida;

(iii) 100 Pelican Street, Satellite Beach, Florida;

(iv) 2556 Andrews Avenue, Melbourne, Florida;

(v) a duplex located at 1503–1509 Croftwood Drive, Melbourne, Florida; and

(vi) a commercial property located at 7455 South Highway U.S. 1, Titusville, Florida 32780 having a BU–1 general retail commercial zoning classification and having the legal description:

From the intersection of the Easterly Right–of–Way line of U.S. Highway #1, and the North line of Lot 2, Block 1, Bellewood Subdivision, according to the plat thereof recorded in Plat Book 3, Pages 24 and 25, public records of Brevard County, Florida; thence run Southerly along said Right–of–Way line a distance of 50 feet to the Point of Beginning; for a

first course run thence Northeasterly parallel to the North line of Lot 2 a distance of 200 feet, thence run Southeasterly parallel to said Right–of–Way line of U.S. Highway No. 1 at a distance of 200 feet, thence run Southwesterly parallel to the first course a distance of 200 feet more or less to the Easterly Right–of–Way line of U.S. Highway No. 1, thence run Northwesterly along said Right–of–Way line a distance of 200 feet to the Point of Beginning; being a part of Lots 2, 3, and 4, Block 1, Bellewood Subdivision, as per Plat Book 3, Pages 24 and 25, Public Records of Brevard County, Florida.

(the "Property"). Several foreclosure proceedings were pending against the Debtor on the Petition Date. Coastal's foreclosure sale of the Property was scheduled for May 6, 2009, but was stayed by the filing of this case.

Relief from the automatic stay was granted to the secured creditors holding mortgages on the Pelican Street and Andrews Avenue properties. Coastal seeks stay relief contending: (i) the Debtor did not own the Property on the Petition Date; (ii) there is no equity in the Property and it is not necessary to an effective reorganization; and (iii) Coastal lacks adequate protection of its interest in the Property.

The Property is encumbered by two mortgages. Coastal holds a first priority mortgage pursuant to a Mortgage Deed and Security Agreement executed by the Debtor on January 30, 2004 and recorded in the Official Record Book of Brevard County on February 16, 2004 at Book 5199, Page 0128 (Coastal's Ex. No. 2). The Mortgage Deed secures the Debtor's performance of a Promissory Note in the principal amount of $258,000.00 executed by the Debtor in favor of Coastal on January 30, 2004 (Coastal's Ex. No. 1).

Coastal's Note has a twenty-year term and interest accrues on the principal at the adjustable rate of prime plus two percent, with an initial rate of six percent. The Debtor is required to make monthly payments to Coastal for all property taxes and insurance premiums relating to the Property.

John Sorgenfrei and Deana Sorgenfrei hold a second priority mortgage pursuant to a Mortgage Deed (Balloon Mortgage) executed by the Debtor on January 30, 2004 and recorded in the Official Record Book of Brevard County on February 16, 2004 at Book 5199, Page 0145. The Mortgage Deed secures the Debtor's performance of a Balloon Installment Note in the principal amount of $25,000.00 executed by the Debtor on January 30, 2004. Interest at the per annum rate of eight percent accrues on the Note's principal balance. The Note ballooned on December 30, 2008.

Coastal filed Claim No. 7–2 for a secured debt of $268,937.42, which includes pre-petition arrearages of $43,094.15. The Debtor failed to make the monthly payment due on May 1, 2008 and all subsequent months. Coastal advanced $4,397.11 prepetition for the payment of property taxes and insurance. The Sorgenfreis filed Claim No. 8 for a secured debt of $19,850.49, which contains a pre-petition arrearage of $3,821.88.

### Ownership of the Titusville Property

Coastal contends Kaye Properties, L.L.C. ("Kaye") owned the Property on the Petition Date pursuant to a Quit–Claim Deed executed by the Debtor as Grantor prepetition. Coastal asserts the subsequent Quit–Claim Deed transferring the property back to the Debtor is ineffective because it was recorded after the Petition Date. The Court recently addressed this issue in *In re Philip A. Hicks,* Case No. 6:09–bk–00549–ABB, Chp. 13 (Doc. No. 80).

The Debtor executed a Quit–Claim Deed on January 9, 2008 (Coastal Ex. No. 3) ("Quit–Claim Deed I") transferring the Property "[t]ogether with a Fleet Mobile Home I.D. # GAFLY75A36658WS21" to Kaye as Grantee. Paragraph 6 provides:

> For the consideration described in Paragraph 5, I convey, remise (to give up a claim), and quit claim (transfer without warranty) to you any interest I may have in and to the Real Property.

Quit–Claim Deed I sets forth the legal description of the Property and its Parcel Identification Number. Paragraph 5 recites consideration of $10.00 was paid by the Debtor to Kaye. The Debtor executed Quit–Claim Deed I in the presence of two subscribing witnesses and a Notary Public. It was recorded in the Official Records Book of Brevard County on January 10, 2008 at Book 5837, Page 3786.

Kaye deeded the Property and the mobile home back to the Debtor pursuant to a Quit–Claim Deed executed on January 27, 2009 by Rory Hayden "as President and manager of Kaye Properties LLC" (Coastal's Ex. No. 4) ("Quit–Claim Deed II"). Paragraph 6 provides:

> For the consideration described in Paragraph 5, I convey, remuse (to give up a claim), and quit claim (transfer without warranty) to you any interest I may have in and to the Real Property.

Quit–Claim Deed II sets forth the legal description of the Property and its Parcel Identification Number. It was executed by Rory Hayden in the presence of two subscribing witnesses and a Notary Public. It recites consideration of $10.00 was paid by the Kaye to the Debtor. Quitclaim Deed II was delivered to the Debtor prepetition. Quit–Claim Deed II was recorded in the Official Records Book of Brevard County post-petition on May 12, 2009 at Book 5948, Page 2769.

The Debtor is the sole member of Kaye. He transferred the Property to Kaye "for the purpose of marketing the property" and Kaye deeded it back to him "because it was unable to market the property" (Doc. No. 52). Kaye made mortgage payments to Coastal while Kaye held title to the Property. Kaye did not execute the Coastal and Sorgenfrei Notes and Mortgages. Kaye is not an obligor of those debt and security instruments.

Quit–Claim Deeds I and II meet the essential requirements for the valid conveyance of real property pursuant to Florida State statutory and case law:

> (i) The Quit–Claim Deeds are written instruments conveying ownership of the Property.
>
> (ii) They were each executed by the grantors and witnessed by two subscribing witnesses.
>
> (iii) Each Quit–Claim Deed is presumptively supported by consideration.
>
> (iv) The Property is sufficiently described in each Quit–Claim Deed.
>
> (v) Each Quit–Claim Deed was delivered to the grantee.

Quit–Claim Deed I was an effective conveyance of the Property from the Debtor to Kaye. Quit–Claim Deed II was an effective reconveyance of the Property from Kaye to the Debtor prepetition. Recordation of Quit–Claim Deed II was not required to effectuate the transfer of the Property from Kaye to the Debtor.

The Debtor, on the Petition Date, had a fee simple ownership interest in the Property pursuant to Quit–Claim Deed II. The Property is non-homestead property and the Debtor did not claim it or its rents as exempt. The Property and its rental income constituted non-exempt property of the bankruptcy estate on the Petition Date.

### *Relief from Stay*

The Debtor asserts the Property is fundamental to the success of his Chapter 13

case and the Property's net positive rental income constitutes equity. He contends the Plan payments to Coastal constitute adequate protection. Coastal has the burden to establish there is no equity in the Property and the Debtor has the burden of proof on all other issues.

The Debtor's Plan is to be funded primarily by the rental income from the Property. He receives total monthly rent of $3,500.00 from the Property. A portion of the Property is leased by Dan Landan, d/b/a Davinci Tattoos, pursuant to a Commercial Lease Agreement executed by the Debtor and Tenant on May 1, 2009. The tenant is obligated to pay the Debtor monthly rent of $3,000.00 "plus applicable sales tax" during the five-year lease term. The Debtor is responsible for "all municipal, county, or state taxes . . . ." relating to the Property. The Debtor asserts a portion of the Property constitutes residential space and is leased by a tenant who pays monthly rent of $500.00.

The expenses related to the Property have not been fully delineated. The Debtor's Affidavit fails to address: (i) whether the tenants are current with their payment obligations; (ii) the taxes and insurance paid post-petition by Coastal; (iii) the pre-petition arrearages owed to Coastal; (iv) the accruing monthly mortgage payments owed to the second priority mortgage holder; (v) the prepetition arrearages owed to the second priority mortgage holder; (vi) any on-going and/or outstanding utilities or other expenses related to the Property.

*11 U.S.C. Section 362(d)(2):*

Equity is determined by comparing the Property's value to the secured debt encumbering the Property. The Debtor values the Property at $240,000.00 in Schedule A. The secured claims of Coastal and the Sorgenfreis' total $288,787.91 which exceeds the Property's valuation of $240,000.00. Coastal's lien is undersecured by $28,937.42 and the Sorgenfreis' lien is wholly unsecured based upon the valuation of $240,000.00.

Rental income is relevant to valuation and adequate protection. The Debtor presented no evidence as to the basis of the $240,000.00 valuation and whether the rental income is a valuation component. The valuation may not be the most accurate valuation.

This case is in its early stages. The claims bar date is September 16, 2009 and the Debtor's Plan (Doc. No. 13) has not yet been confirmed. The Debtor has not objected to Claim No. 7–2 or Claim No. 8 and those claims are pending. The Debtor has various options to consider including claim objections and lien stripping or lien modification. It is premature to determine if there is equity in the Property. All Chapter 13 cases ultimately turn upon feasibility of the plan. The feasibility of the Debtor's Plan will be addressed at the confirmation hearing.

The Property appears to be the Debtor's primary source of income. The Debtor's Plan provides he will make Plan payments of $7,000.00 for sixty months, for a total of $420,000.00. Half of the Debtor's monthly Plan payment, $3,500.00, derives from the Property rental income. The Plan states the Debtor intends to surrender the Croftwood Drive Property. Stay relief was granted as to the Pelican Street and Andrews Avenue properties. Any rental income derived from the Croftwood Drive, Pelican Street, and Andrews Avenue properties will not be available to fund his Plan.

The Property is essential to the funding of the Plan. The Debtor has established the Property is necessary to the success of this case. Coastal is not entitled to relief from the automatic stay pursuant to Section 362(d)(2) of the Bankruptcy Code.

*11 U.S.C. Section 362(d)(1):*

Coastal states in its Affidavit the monthly mortgage payment is $2,168.76, but it

requires monthly payments of $3,506.59 consisting of the mortgage payment of $2,168.76 plus an escrow amount of $1,337.83 for post-petition property taxes and insurance (Doc. No. 58, ¶¶ 11, 12). The Debtor asserts the escrow portion of the mortgage payment is $1,035.63.

The Debtor's Plan provides monthly payments of $2,324.00 will be paid to Coastal with interest at five percent. Coastal's interest in the Property is adequately protected by the periodic cash payments provided for in the Plan. Cause does not exist for stay relief pursuant to 11 U.S.C. Section 362(d)(1). Coastal's Motion is due to be denied.

## CONCLUSIONS OF LAW

### Ownership of the Titusville Property

The filing of a bankruptcy petition creates an estate comprised of all of the debtor's legal and equitable interests in property as of the petition date. 11 U.S.C. § 541(a). "Property of the estate" in a Chapter 13 case additionally includes all Section 541 property acquired by the Debtor post-petition and "earnings from services performed by the debtor . . . ." 11 U.S.C. § 1306(a). All of the Debtor's legal and equitable interests in real and personal property and the rents from such property became property of the estate on the Petition Date. 11 U.S.C. §§ 541(a), 1306(a).

■■■ Property interests are created and defined by state law, unless a particular federal interest requires a different result. *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); *Southtrust Bank of Ala. v. Thomas (In re Thomas),* 883 F.2d 991, 995 (11th Cir. 1989). Florida statutory and case law govern the determination of whether the Debtor had an ownership interest in the Property on the Petition Date. *Id.* Bankruptcy law, if the Debtor is determined to have had an interest in the Property on the Petition Date, governs whether the interest constitutes property of the estate. *In re Daugherty,* 261 B.R. 735, 738 (Bankr. M.D.Fla.2000).

■■■ Section 689.01 of the Florida Statutes governs the conveyance of real property:

> No estate or interest of freehold, or for a term of more than 1 year, or any uncertain interest of, in or out of any messuages, lands, tenements or hereditaments shall be created, made, granted, transferred or released in any other manner than by instrument in writing, signed in the presence of two subscribing witnesses by the party creating, making, granting, conveying, transferring or releasing such estate, interest, or term of more than 1 year, or by the party's agent thereunto lawfully authorized, unless by will and testament, or other testamentary appointment, duly made according to law; and no estate or interest, either of freehold or of term of more than 1 year, or any uncertain interest of, in, to or out of any messuages, lands, tenements or hereditaments, shall be assigned or surrendered unless it be by instrument signed in the presence of two subscribing witnesses by the party so assigning or surrendering, or by the party's agent thereunto lawfully authorized, or by the act and operation of law. No seal shall be necessary to give validity to any instrument executed in conformity with this section. Corporations may convey in accordance with the provisions of this section or in accordance with the provisions of ss. 692.01 and 692.02.

FLA. STAT. § 689.01 (1997).[1] The Florida State Courts have delineated additional es-

---

1. Florida Statute Section 689.01 was amend- ed in 2008 to clarify certain terms. The

sential elements for a valid conveyance of real property. The deed or other instrument must be supported by at least nominal consideration. *Kingsland v. Godbold,* 456 So.2d 501, 502 (Fla. 5th DCA 1984). The recitation of consideration in a deed raises a presumption of supporting consideration. *Id.* The deed or other instrument must identify or describe the land affected. *Simons v. Tobin,* 89 Fla. 321, 104 So. 583, 584 (1925). The deed must be delivered to the grantee. *McCoy v. Love,* 382 So.2d 647, 649 (Fla.1979) ("Without delivery, nothing passes to the grantee.").

Quit–Claim Deed 1 was executed in conformity with Florida Statute Section 689.01. It meets each of the Florida statutory and case law elements required for an effective conveyance of real property. It conveyed the Property from the Debtor to Kaye on January 9, 2008.

Quit–Claim Deed II was executed in conformity with Florida Statute Section 689.01. It meets each of the Florida statutory and case law elements required for an effective conveyance of real property. It conveyed the Property from Kaye back to the Debtor on January 27, 2009.

■ The recordation of a deed is not a prerequisite for an effective conveyance of real property. FLA. STAT. § 689.01; *Sweat v. Yates,* 463 So.2d 306, 307 (Fla. 1st DCA 1984). "A deed takes effect from the date of delivery, and the recording of a deed is not essential to its validity as between the parties or those taking with notice." *Sweat v. Yates,* 463 So.2d at 307.

■ The purpose of recording an interest in real property pursuant to Florida's recordation statute, Florida Statute Section 695.01, is to place subsequent purchasers and creditors on notice of such interest. *Luria v. Bank of Coral Gables,* 106 Fla. 175, 142 So. 901, 908 (1932). Section 695.01 provides:

(1) No conveyance, transfer, or mortgage of real property, or of any interest therein, nor any lease for a term of 1 year or longer, shall be good and effectual in law or equity against creditors or subsequent purchasers for a valuable consideration and without notice, unless the same be recorded according to law; nor shall any such instrument made or executed by virtue of any power of attorney be good or effectual in law or in equity against creditors or subsequent purchasers for a valuable consideration and without notice unless the power of attorney be recorded before the accruing of the right of such creditor of subsequent purchaser.

(2) Grantees by quitclaim, heretofore or hereafter made, shall be deemed and held to be bona fide purchasers without notice within the meaning of the recording acts.

FLA. STAT. § 695.01. "The statute obviously was not intended to have the result of requiring a grantee to record his own deed within a specified time, or lose an otherwise valid title." *Moyer v. Clark,* 72 So.2d 905, 908 (1954).

The post-petition recordation of Quit–Claim Deed II did not affect its validity as between Kaye and the Debtor. *Black v. Skinner Mfg. Co.,* 53 Fla. 1090, 43 So. 919, 921 (1907); *Licata v. DeCorte,* 50 Fla. 563, 39 So. 58, 59 (1905). Quit–Claim Deed II was valid as between Kaye and the Debtor and as to others who had notice thereof. *Licata v. DeCorte,* 39 So. at 59.

Quit–Claim Deed II while it was unrecorded would have been ineffectual or void as to "creditors or subsequent purchasers for a valuable consideration and without notice" of such deed pursuant to Florida Statute Section 695.01(1). "Thus, while § 695.01(1) may 'void' a conveyance as to a

amended statute was effective July 1, 2008.    The amended statute is not retroactive

certain creditor ..., it does not automatically void a conveyance *in toto.*" *In re McCall,* 74 B.R. 666, 670 (Bankr.M.D.Fla. 1987).

■ Kaye validly conveyed title to the Property to the Debtor prepetition pursuant to Quit–Claim Deed II and the Debtor held title to the Property on the Petition Date. The Property is non-homestead property and the Debtor did not claim it or its rents as exempt. The Property and its rents constituted non-exempt property of the estate on the Petition Date. 11 U.S.C. §§ 541(a)(1), 541(a)(6).

### *Relief from Stay*

■ Section 362(d) of the Bankruptcy Code provides, on request of a party in interest and after notice and a hearing, the Court "shall grant relief" from the automatic stay:

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

(2) with respect to a stay of an act against property under subsection (a) of this section if—

(A) the debtor does not have equity in such property; and

(B) such property is not necessary to an effective reorganization.

11 U.S.C. § 362(d). The party requesting stay relief "has the burden of proof on the issue of the debtor's equity in property" and the debtor "has the burden of proof on all other issues." 11 U.S.C. § 362(g).

Coastal seeks relief from the automatic stay on alternative grounds pursuant to 11 U.S.C. Section 362(d)(2) and 362(d)(1). It includes a totality of the circumstances discussion in its post-hearing brief as additional grounds for stay relief, but its Motion only addresses lack of adequate protection as a "for cause" stay relief basis.

### *11 U.S.C. Section 362(d)(2)*

■ The term "equity" is not defined by the Bankruptcy Code. The Bankruptcy Courts have uniformly held no equity exists in property where the claims secured by the property exceed the value of the property. *In re Annicott Excellence, LLC.* 258 B.R. 278, 284 (Bankr. M.D.Fla.2001); *In re Ramos,* 357 B.R. 669, 671 (Bankr.S.D.Fla.2006). Any rental income generated by the Property is not relevant to an equity calculation. *See, In re Annicott,* 258 B.R. at 284 (finding debtor, who owned and operated five mobile home parks that generated rental income, had no equity in the properties where the secured debt encumbering the properties exceeded their value).

■ The Debtor values the Property at $240,000.00 and the secured claims encumbering the Property are $288,787.91. The valuation of $240,000.00 may not take into account the Property's rental stream and may not be the most accurate valuation. Claim Nos. 7–2 and 8 are pending and do not yet constitute allowed claims. The Debtor has options to consider including claim objections and strip off or modification of the liens pursuant to 11 U.S.C. Section 1322(b). It is too early in the case to make an equity determination.

The second prong of Section 362(d)(2). "not necessary to an effective reorganization," has not been established. The Debtor has established the Property is essential to the success of this case Chapter 13 case. Its rental income is the Plan's primary source of funding. Coastal's request for relief pursuant to 11 U.S.C. Section 362(d)(2) is due to be denied.

### *11 U.S.C. Section 362(d)(1)*

■ The Debtor bears the burden to establish Coastal's security interest in the Property is adequately protected. 11 U.S.C. Section 362(g). Adequate protec-

854

tion may be provided by periodic cash payments. 11 U.S.C. Section 361(1).

The Debtor's Plan provides Coastal will be paid $2,324.00 per month for sixty months. Coastal's monthly mortgage payment is $2,168.76. The Plan payment exceeds the mortgage payment. The monthly Plan payment provides adequate protection of Coastal's interest in the Property. No cause exists for granting Coastal relief from the automatic stay pursuant to 11 U.S.C. Section 362(d)(1). Coastal's Motion is due to be denied.

Accordingly, it is

**ORDERED, ADJUDGED and DE-CREED** that Coastal's Motion for Relief from Stay (Doc. No. 34) is hereby **DENIED,** without prejudice.